Good morning, Richard Rome, appearing for the appellant. This is a case where the defendant was convicted of importing meth and conspiring to distribute meth. And he was convicted on those two counts and acquitted on a conspiracy to launder money. What's the evidence that supports the conspiracy? There is none. There is no evidence that supports the conspiracy. Now, is that maybe a little hyperbole? Well... I mean, is none an insufficient? They're not, you know, I'm going to have to call you out on that. I can't go with none. So let's talk about... It would have to take a wild stretch. The cases that this Court did direct us to brief in certain cases, and one of them was the Rubio-Villareal case. And in that case, which was a conspiracy case, the conviction was reversed, and it was very similar where somebody was driving drugs. Across the same point, actually. I believe it was. But the facts in that case were actually much stronger to establish a conspiracy than they are in this case, because the individual left the truck in very unusual circumstances, got in another car, and actually when he crossed the border, he had two other people in the car with him. One was his son, and one was a friend, Garcia, and then there's all this strange activity at the parking lot where he leaves, he comes back, and then this super strange activity at the hotel where he leaves the truck with all the drugs in it at the hotel for a long period of time, comes back with somebody else driving the car. So there's much stronger evidence of conspiracy in that case than there is here. I mean, here there's... I tend to agree with you. There's nothing other than the expert testimony which doesn't relate to this defendant at all. Well, that's right, and that's why I said none, because when you look at what the requirement is and what they said in Rubio Villareal, there was no evidence to show a conspiracy. Well, then maybe look at me, because he said he tends to agree with you. So let's say... So let's play the devil's advocate here that I would argue that it's obvious that the appellant wasn't working alone. He was a courier for a drug trafficking organization. You get all inferences in favor of the verdict. There's also significant circumstantial evidence, and if I remember my trial court days, circumstantial evidence is just as good as direct. Number one, the quantity and purity of the meth in the appellant's car, 10.38 pounds at 99.4% purity with a street value of $103,800, which in my wallet right now I probably have about $30, so I don't... I'm not authorized for more than that. I do have credit cards. The special modifications made to the car to conceal the drugs and the expert testimony regarding how trafficking organizations work. So, you know, my argument would be if we were to accept your theory that that is none, then we would always have to be able to name a co-conspirator. We would always have to be able to... And that, you know, I don't think that defies logic to me, that there can be circumstantial evidence that would indicate this just isn't happening in a vacuum. And you don't get $103,000 worth of drugs, you know, working by yourself. It just isn't, you know, so giving all inferences to the... Wasn't there also a Greyhound bus ticket of some kind showing? There was a Greyhound bus ticket. And what did that show? Well, it just showed that there was a ticket on a certain date that was supposed to go, I believe, from L.A. to Tijuana. But it didn't really show a whole lot of information that would relate to the conspiracy. But what's the inference that you can argue? Well, there's an inference that you can draw from that, isn't there? I mean, he didn't drive this car over there. Somehow he was taking a bus over it. Can't you infer he was bringing it back? Well, when we look at Rubio Villarreal and see what points that they stressed in finding no conspiracy, here's what it said. There was no agreement. There was no identity of a co-conspirator. There was no relationship between the defendant and the co-conspirator. There was no contact between a defendant and any others. There was no minute order. This is it, yeah. There was no modus operandi, no active co-conspirators. In our case, we have one person that drove over the border in a vehicle. And if we're going to line it up with what Rubio Villarreal says, I don't think so. Otherwise, in every case where somebody would be driving something over the border, we would just say, well, we have a conspiracy. Well, I try to drive over without $103,000 worth of drugs in a compartment. But what I mean is if we were to take every case where somebody drove over the border with drugs, then it would automatically be a conspiracy under what the court's analogizing. So I think it's got to be a lot more specificity. We don't have any here. He didn't make any admission. What was the amount of drugs in the case that... It was 10 pounds, 10.2... No, no, no. In the case that you're Villarreal, what was the amount of drugs there? Let me see. Well, if you don't know, that's okay. I mean, I can check, but... It was 7.42 kilos of cocaine in Rubio Villarreal. Okay. Just the other point that I would like to make with respect to if there is no evidence of a conspiracy, then there should have never been any... It shouldn't have been filed, and there shouldn't have been any drug structure testimony that impacted the importing charge. The cases say that in an importing case, you can't use the expert testimony of the drug trafficking structures. So if, in fact, the conspiracy here was devoid of evidence and should not have been filed under these other cases, then there would have been inadmissible evidence that came in on that importing charge. But couldn't that be harmless error? Well, I don't know. When you look at what that drug expert testified to, he spent several pages in the transcript testifying about how the whole structure was set up. And that was used in the importing count and also was argued as a way to show knowledge, which was the key element in the import. So... Yeah, but hasn't the circuit allowed that type of evidence to show knowledge? What it doesn't, right? It does, but it depends what the counts are. I mean, it definitely can be used and argued that way, but that wouldn't have come in. The drug structure testimony would not have come in. But for the conspiracy count. That's right, and that's what the other two cases that the court directed our attention to basically say, Vallejo and Pineda Torres. So my question is, these cases have been around for decades. Why was the conspiracy count filed if there's no evidence other than it had the effect of bringing in the drug expert whose name was Worgen, who testified extensively about spotters, growers, manufacturers, the whole lineup? Well, let me ask you this, though. If, let's just say that we don't buy that argument. I'm just talking hypothetically. I'm not, because I don't know what anyone thinks here. So, but let's say hypothetically we don't buy your argument that then the expert testimony wouldn't have come in or that it wasn't harmless there. But let's say we buy your argument that there's not sufficient evidence to support the conspiracy. Is that a pyrrhic victory for you? I mean, is it, is there, is it, you know, I mean, would anything, would there be any reason to send it back for sentencing if there are concurrent sentences? If you only, if you were to only win on that? I think that's why you have to buy my other argument. It might be, it might be an argument. All right. Well, I just want to make sure that I understand that because, you know, I mean, obviously if your, your client had never been born, he wouldn't have been in this situation, so we could go back a long way. But, but I just want to make sure that the argument would have to reach further back from just the insufficiency of the evidence on the conspiracy. It would have to taint the other conviction for it to make a, I just want to make sure I'm not missing anything. I think you're right, whether, whether it would impact the sentencing or not, unless the judge, if the judge thought that if there was no conspiracy count, there might have been a different sentence. Do you want to save a minute for rebuttal? I would like to save one minute if I could. Okay, thank you. Thank you. Good morning. Good morning. Stacey Sullivan on behalf of the United States. So you know where we're going. I know exactly where you're going. Yeah, the question I asked to your opponent was directed to you. Where's the evidence of the conspiracy? All right, and I will get right to that. I think the most important evidence here has to do specifically with the Greyhound bus ticket, and this was argued in closing. And in addition, there were records admitted in regards to certified DMV records. Now, this defendant, according to the DMV records, purchased the vehicle on December 5th, and the defendant, I'm sorry, December 7th, he purchased the vehicle, and then the text records, which were admitted through the expert, he's also an expert in text, showed. Text? Text is the system that crosses back and forth. Not T-E-X-T. T-E-C-S. Got it. T-E-C-S. The text records show that this particular defendant crossed in the pedestrian lane north from Tijuana to the United States on December 11th. So somehow this defendant lives in Los Angeles. That was the evidence. Bought it where? In Los Angeles. On December 7th. On December 7th. And then comes north from Mexico on December 11th. Pedestrian, yes. Right. Okay? The vehicle then is registered by the defendant in Los Angeles on December 13th. We have no further evidence of this vehicle crossing either southbound or northbound into the United States until January 5th. January 5th is very important. January 5th is the date of that Greyhound bus ticket. The defendant came from Los Angeles to Tijuana on January 5th on the Greyhound bus. And you infer that he picked up the car. He picked up the car from the people who had made the compartment in Mexico, his co-conspirators. This was all argued on closing. Then at 9.45 a.m. he arrives in Tijuana on the Greyhound bus. He picks up the car in Tijuana. He then crosses on January 5th northbound in the vehicle. Same day as the Greyhound ticket. Same day at 2.45. Almost the exact time it would take, give and take maybe 45 minutes, to get from Tijuana east to Imperial Valley to the Calexico port of entry. That's the date when he first picks up the vehicle after the compartment had been made by the co-conspirators and he drives it north to the United States. He then takes the vehicle one more time and the next time it's crossed from Mexico into the United States is January 9th when he was caught with the methamphetamine. He didn't cross once for this organization, he crossed twice. And he picked up the vehicle after they had specifically modified it, not for just the purpose of the drugs, but for the purpose of carrying the drugs. How do you know it was modified in the time period that you're alleging? That's circumstantial evidence. And the expert testified specifically. That's what the structural evidence was for. The structural evidence was to show that these organizations are extremely organized and they buy these cars, they put them in the names of the smugglers, and then they're modified in Mexico with these compartments. And they're not modified by the couriers. The couriers just pick up the vehicle 99% of the time. They don't even know what kind of drugs are in that car.  And your point is that the compartment was set up so that it could both transport drugs and currency. Absolutely. This compartment, I've been doing this for a lot of years, and my case agent had been doing it for a lot of years, and also the CBP officers, nobody had seen a compartment like this before. And immediately you notice that. Did anybody do any CSI examination of where the mud came from? No, we didn't. We did not do that. They do that on television all the time. Yes, they do. And they have these incredible labs. I wish we had. And they're really quick. They're very quick. It all happens in an hour. Yeah. And if the mud came from Mexico, that would really make your case. Wouldn't it? But, you know, if the car didn't belong to the defendant and it wasn't registered in his name, you'd be arguing that that was evidence of a conspiracy. Right? You kind of want it both ways. Yes, you could go. Well, I've seen that argument many times. I've made that argument. And you've made that argument. Yes. So how is it that you get it both ways? Well, I think you have to look at the individual circumstances of the case. In this case, we don't just have the fact that the car was registered in his name. He claimed ownership. And then he's going to be driving this car, and he's got a compartment designed not for just the purpose of transporting the drugs north, for the currency south. It implies not that he's just a courier. He's a trusted courier. There are so many different types of couriers. We have the people that are at the bus station on heroin. Hey, do you want to make a couple hundred bucks? Cross this for us today. They don't make these kinds of compartments for these couriers, and they certainly don't make these kinds of compartments where they fit exactly U.S. currency. And they don't register it in the name, the actual name of the owner of the vehicle. And that is evidence of the conspiracy. Also, and this is not in the brief, and I apologize, and I realized this after I started reading the cases that you had requested that we specifically discuss today, and that is there was evidence of a phone call that had been made to the defendant at 4 a.m. on his cell phone on the morning which he crossed the drugs, January 9th. That analysis of the phones showed that he'd been called by somebody. That's in the record but not the brief? Is that what you just told us? Right, right. If you'd like, I can point you to the exact page on the record. But I argued it in my closing on... So what's the inference on that phone call? The inference is that, and this is why the spotting testimony was admitted through the expert, that when these people are crossing drugs, they're watched. And they're watched not just because maybe they might not be trusted to take the drugs themselves, but the cartels know that the first thing the agents do is they analyze the phones and they look at who's calling the courier. And what happens is they watch and they see that that courier sent a secondary and the drugs are seized. They're calling everybody else who's called that courier on the phone about the transportation, and they're saying, drop your phones, kill the number, so that the agents can't trace any calls made to that phone. And the case agent did testify. He found that 4 a.m. call on the day of the arrest and the crossing to be suspicious. And when they tried to follow up on that 4 a.m. phone number, that number had been dropped. That phone had been dropped. So that is solid evidence of a person possibly involved in smuggling contacting this defendant and that someone was watching him and he was working with other people. And that goes specifically to, and I would say the Villarreal case, where we say expert testimony on general practices of criminals may be used if it helps a trier fact to understand how combinations of seemingly innocuous events may indicate criminal behavior. And I would argue that's exactly what happened here. We have a combination of seemingly innocuous events, the Greyhound bus ticket, the crossings into the United States, and then the 4 a.m. phone call. A compartment in the car. All of this together shows that he's working in conspiracy with other people in a very complex organization. And we know how these organizations work. It's not rock and scientists. We debrief these defendants all the time in order to get their safety valve credit, and we know how they work. All right? Well, I want you to compare the evidence in the Rubio Villarreal case. Do you disagree with my assessment that that's a stronger case of a conspiracy than this one? It doesn't necessarily mean it controls. But just in looking at the two cases, isn't there stronger evidence of a conspiracy there? To some extent on the other side of the border in the United States where they were observing the defendant Yes, but in that case, there was no expert testimony that was applying what we know about how these conspiracies work to the exact facts of that case. There was no expert testimony whatsoever. And I'm saying here that in conjunction, the specific facts of this particular case combined with the expert testimony on how we know these conspiracies work was proper. How long have you been at this? I've been a prosecutor for 10 years. You know, if we're going to compare experience, I've sentenced more than 500 defendants in the District of Arizona, the vast majority of which are on border crossings. Yes. And never once have they charged a conspiracy to my recollection, period, let alone on facts like this. So, you know, we have different sets of experiences here. But I want to ask you one question, if I may, about the compartment. Sure. Because I'm starting to soften my position, so you're making some progress. If it was just a general hidden compartment, I'm not sure that's evidence of a conspiracy, because lots of people who cross the border and buy drugs use a secret compartment, and it's just a buy-sell. It doesn't prove a conspiracy if it's a, you know, they buy and then they cross the border and sell it. Is it the unique nature of the compartment, which indicates it's specially designed to transport drugs north and bulk cash south, that makes it, there's a stronger inference of a conspiracy here? Because I've never read a case or had a case where a defendant on his own was taking drugs north and bulk cash south. You know, that's not something a defendant would do on their own. There's no reason to take the cash south to Mexico, really, if you're not part of a conspiracy, right? There's very little reason to do it. I agree with you. I think definitely this particular type of compartment, we felt that it proved that he was a trusted member of the organization. It was highly unusual. And because it was registered to him, it wasn't a factory compartment. It was quite sophisticated. It was hard to find. But you say there's one compartment for the money and one for the drugs? No, it was actually, it was seven stainless steel rectangular boxes. Same size as money. The exact same size. That ran the length of the car, basically. Yes, ran the length of the undercarriage of the car horizontally. And you had to remove the left, one of the tires to even get at the compartment. Then there was a belt that pulled them out. And then you could see how each one had like a series of methamphetamine and amphetamine. You could just stack the currency right in there and put it right back and get right back southbound. He'd have to be one heck of an entrepreneur, I guess, if he was acting on his own, right? Absolutely. He had great planning skills. Did he patent the secret compartment? Pardon? Did he seal the compartment? Did he patent it? Oh, patent it. No, but he should have. All right. Thank you for your argument. All right, counsel, you have a minute. Just two points. The only thing on the, with respect to the size and the fact that this money would allegedly fit in there and that this was going to be a big money smuggling operation, the jury rejected that. Count five was a conspiracy to launder money. And he was found not guilty on that. So whether that was for money or not, the juror didn't think so. So I don't think we should be able to extrapolate. Well, but laundering money is different than carrying money to pay for drugs, too, isn't it? Completely. Right, but they could have convicted him of it if they thought that he was going to be taking the money back. Well, see, but I would make an argument the other way that saying that you have a jury that actually followed the instructions. They didn't convict a, you know, they looked at each count separately and decided which were proven and which weren't. That's absolutely correct. The only problem is they made a mistake on count one. And I think, just real briefly, the rest of this is a phantom conspiracy. If we go back and look at the- Well, wait. Do you have any disagreement at all with the factual recitation that the other side made about when the car was purchased and the ticket and the crossings north? That's all accurate. And it seems to me that that's why the jury inferred that he was working with other people. Well, they might very well. Then we have to reconcile it with the other case where there's been no conviction in Arizona. In other words, every case where you're going to have a runner coming over with some- Well, there's been no charging in Arizona. It was curious to me that this was charged as a conspiracy, but now I understand why it was charged as a conspiracy. Well, and if it wasn't, then just to go back briefly, it should absolutely have an impact on that importation charge, too, because by charging something that should have never been charged, there was a whole bunch of illicit evidence that came in by way of that drug expert that was used to convict him on the importation count also. All right. Thank you. Thank you. Thank you both for your argument. Very helpful. This matter will stand submitted.
judges: Bennett, Trott, Callahan